IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ELIZABETH EDMONDS,

      Plaintiff,

    v.                                      Civil Action No. 3:22cv496

PATSY HARRIS, *et al.*,

      Defendants.

## <u>MEMORANDUM OPINION</u>

This matter comes before the Court on Plaintiff Elizabeth Edmonds' Motion for Remand (the "Motion"). (ECF No. 6.) Defendants Wal-Mart Stores East, L.P., Wal-Mart Stores, Inc.[1] (collectively, the "Walmart Defendants"), and Patsy Harris,[2] (collectively, with the Walmart Defendants, "Defendants") responded. (ECF No. 8.) Edmonds replied, (ECF No. 9), so the matter is ripe for disposition.

The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons stated below, the Court will grant Edmonds' Motion to Remand. (ECF No. 6.)

---

[1] Wal-Mart East, L.P. has two partners: Wal-Mart- Stores East Management, LLC and Wal-Mart Stores East Investment, LLC. (ECF No. 1 ¶ 8 (i).) Both are Delaware limited liability companies whose principal places of business are Bentonville, Arkansas. (ECF No. 1 ¶ 8(i).) Wal-Mart Stores East Management, LLC has a sole member: Wal-Mart Stores East, Inc., an Arkansas corporation with its principal place of business in Bentonville, Arkansas. (ECF No. 1 ¶ 8(ii).) Wal-Mart Stores East Investment, LLC also has a sole member: Wal-Mart Stores East, Inc., an Arkansas corporation with its principal place of business in Bentonville, Arkansas. (ECF No. 1 ¶ 8(iii).)

Wal-Mart stores, Inc., is the former name of Walmart, Inc., which is a Delaware corporation with its principal place of business in Bentonville, Arkansas. (ECF No. 1 ¶ 7.)

[2] The parties agree that Harris is a Virginia resident.

# I. Background

## A.     Summary of Allegations in the Complaint

On or about June 26, 2018, while shopping at Wal-Mart Supercenter Store #1345, located at 3471 Old Halifax Road in South Boston, Virginia, Edmonds was injured when a case of wooden blinds fell from a shelf and struck her in the head and shoulders. (ECF No. 1-1 ¶¶ 4, 13.) Edmonds named Wal-Mart Stores East, L.P. and Wal-Mart Stores, Inc., as defendants, as well as Patsy Harris, an assistant manager at Wal-Mart Supercenter #1345. Edmonds alleges that the blinds fell onto her head and shoulders because Defendants "caused and created" the hazard by "stacking the boxes of blinds in front of the mid-height security bar, failing to train and supervise their employees on properly stocking blinds onto this shelf, improperly stocking the boxes of blinds on this shelf themselves, failing to routinely inspect[] the blinds on the shelf[,] and failing to maintain position of the blinds securely on the shelf." (ECF No. 1-1 ¶ 9.) Edmonds further asserts that prior to the date of her injury, Defendants "knew or should have known that the box of wooden blinds on the shelf was not stocked [or] positioned properly, safely[, or] securely" and that "the box of blinds [was] placed in front of the mid-height security bar designed to secure the blinds on the shelf[,] leaving the blinds unstable and easily exposed to fall on customers." (ECF No. 1-1 ¶ 8.)

Edmonds seeks $750,00.00 in damages jointly and severally against all Defendants, plus interest and costs. (ECF No. 1-1, at 14.)

## B.     Procedural History

On November 17, 2021, Edmonds filed her Complaint in the Circuit Court for the City of Richmond, Virginia ("Richmond Circuit Court"), seeking damages for personal injuries pursuant to state law negligence claims. (ECF No. 1-1.) Edmonds served all Defendants, serving Harris

2

last on June 22, 2022.  (ECF No. 1 ¶ 4.)  Defendants filed various responsive pleadings in the

Richmond Circuit Court.  (ECF No. 1-2.)  On July 15, 2022, Defendants timely removed the

action from Richmond Circuit Court to this Court pursuant to 28 U.S.C. §§ 1441 and 1446,

claiming diversity jurisdiction under 28 U.S.C. §1332.[3]  (ECF No. 1.)  Defendants also contend

that Harris, a Virginia citizen, was fraudulently joined as a party to the Complaint.  (ECF No. 1

¶ 9.)

On August 9, 2022, Edmonds filed this Motion to Remand alleging lack of diversity

among the parties pursuant to 28 U.S.C. § 1447(c).[4]  (ECF No. 6.)  Edmonds asks the Court to

remand the case and order attorney's fees associated with defending this allegedly improper

removal.  (ECF No. 6, at 3.)  Defendants responded in opposition, (ECF No. 8.), and Edmonds

replied, (ECF No. 9).

- It is undisputed that complete diversity exists between Edmonds and the Wal-Mart

Defendants.  However, both Edmonds and defendant Harris are citizens of Virginia, meaning

---

[3] A federal district court has diversity jurisdiction over "all civil actions where the matter in controversy exceeds . . . $75,000 . . . and is between . . . citizens of different states." 28 U.S.C. § 1332(a)(1).  Federal diversity jurisdiction requires complete diversity of citizenship meaning that "the 'citizenship of each plaintiff [must be] diverse from the citizenship of each defendant.'" *Abraham v. Cracker Barrel Old Country Store, Inc.*, No. 3:11cv182, 2011 WL 1790168, at *2 (E.D. Va. May 9, 2011) (citations omitted).

[4] Subsection 1447(c) of Title 28 of the United States Code provides:

A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.

28 U.S.C. § 1447(c).

that their citizenship is not diverse for jurisdictional purposes. Defendants contend that removal is appropriate because defendant Harris was fraudulently joined in this litigation.

## II. Standards of Review

The Court must evaluate two intermixing principles of law when assessing the Motion at bar: (1) the scope of an employees' personal liability under Virginal law in a negligence claim,[5] and (2) the scope of review for fraudulent joinder when assessing the removal of a negligence claim to federal court.

### A.     Employees' Personal Liability Under Virginia Law

"In Virginia, an employee who injures a third person is liable to that person only if he or she owes the third person a personal duty, which depends on whether the employee's alleged act is one of misfeasance or nonfeasance." *Hall v. Walters*, No. 3:13cv210, 2013 WL 3458256, at *3 (E.D. Va. July 9, 2013) (citing *Harris v. Morrison, Inc.*, 32 Va. Cir. 298, 298 (1993)). "An employee may be liable for his [or her] own misfeasance (i.e., performance of an affirmative act done improperly), but not for his [or her] own nonfeasance (i.e., omission to do some act which ought to be performed)." *Harris,* 32 Va. Cir. at 298–99. Thus, "[u]nder Virginia law, an employee of the owner or operator of the premises in an action based on standard premises liability theories may be held liable only for affirmative acts of negligence, not merely because, in the status of employee of the owner or operator, he or she is guilty of an omission." *Freeman v. Curtis Bay Med. Waste Servs., LLC*, No. 3:18cv437, 2019 WL 210396, at *4 (E.D. Va. Jan. 15, 2019) (quoting *Berry v. Sea World Parks & Entm't LLC*, No. 4:14cv152, 2015 WL 1119942, at *3 (E.D. Va. Mar. 11, 2015)).

---

[5] "It is well-settled under Virginia law that in order to recover on a negligence claim, a plaintiff must establish: (1) that a defendant owed plaintiff a duty, (2) that defendant breached the duty, and (3) that the breach of duty proximately caused plaintiff to suffer damages." *Allard v. Laroya*, 163 F. Supp.3d 309, 313 (E.D. Va. 2016) (citations omitted).

"Both state and federal courts have found that, under Virginia law, a plaintiff who alleges only an employee's failure to detect, remove, or warn of a danger has failed to state a claim of misfeasance for which the employee may be personally liable." *Hall*, 2013 WL 3458256 at \*4. However, if the plaintiff alleges that the employee actually caused the dangerous condition, she or he asserts a claim of misfeasance sufficient for the possibility of liability. *See id.*

## B.   <u>Fraudulent Joinder</u>

The fraudulent joinder doctrine operates as an exception to the complete diversity requirement, permitting a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, if appropriate, and to retain jurisdiction. *See Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). "To show fraudulent joinder, the removing party must demonstrate either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)).

"The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Id.* "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under [Federal Rule of Civil Procedure] 12(b)(6)." *Id.* Indeed, "[o]nce the Court identities [a] glimmer of hope for the plaintiff, the jurisdictional inquiry ends." *Id.* at 426. Distinguishing between nonfeasance and misfeasance requires a fact-intensive inquiry. When determining whether the doctrine of fraudulent joinder applies, the Court must resolve all factual

and legal questions in favor of the plaintiff, a highly deferential standard. *See Hartley*, 187 F.3d at 424.

Furthermore, the United States Court of Appeals for the Fourth Circuit has explained that "a jurisdictional inquiry is not the appropriate stage of litigation to resolve . . .various uncertain questions of law and fact." *Hartley*, 187 F.3d 422 at 425. "Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss. The best way to advance this objective is to accept the parties joined on the *face of the complaint* unless joinder is clearly improper." *Id.* (emphasis added). Allowing "extensive litigation of the merits of a case while determining jurisdiction thwarts the purpose of jurisdictional rules." *Id.*

### III. Analysis

Edmonds alleges that because the boxes of wooden blinds were stacked in a negligent manner (which Defendants knew or should have known), they breached their duty to reasonably maintain a safe environment to which Edmonds came as an invitee. Improperly stacked in front of the mid-height security bar, the boxes fell on Edmonds, causing harm.

Defendants contend that, although both Edmonds and Harris reside in Virginia, the Court has subject matter jurisdiction over the case because Harris was fraudulently joined. Defendants argue that no possibility exists that Edmonds could bring a cause of action against Harris. Edmonds counters that she "has a cognizable cause of action under Virginia law against Defendant Patsy Harris for Harris's affirmative acts of misfeasance." [6] (ECF No. 6, at 1.)

---

[6] In her Complaint, Edmonds alleges several theories of negligence, including that the Wal-Mart Defendants failed to train and supervise their employees on properly stocking the blinds, failed to inspect or maintain the blinds, and failed to warn of a hazardous condition. (ECF No. 1-1 ¶¶ 6-11.) Defendants contend that Edmonds articulates a premises liability case only against Wal-Mart, not the non-diverse citizen Harris. Because, when resolving all inferences of fact and law in Edmonds' favor, the Court finds that she has a cognizable cause of action under Virginia law against Harris for Harris's affirmative acts of misfeasance, it will

6

"[R]esolving all issues of law and fact in the plaintiff's favor," *Hartley*, 187 F.3d at 424, Edmonds' assertion that Harris caused her injury by negligently mishandling merchandise presents a straightforward negligence claim under Virginia law. Defendants do not establish fraudulent joinder because they have not shown that "no possibility" exists that the plaintiff would be able to "establish a claim" against Harris. *Id.* The Defendants fail to meet the heavy burden required to demonstrate fraudulent joinder because, on this record, they do not establish that Harris' conduct was nonfeasance, or a mere failure to act. Edmonds plainly alleges actions taken by Harris that could have caused her injury, meaning that the Court cannot conclude that Edmonds did not fraudulently join Harris. In the absence of complete diversity, Plaintiff's motion to remand will be granted.

### A.     The Court Cannot Consider the Harris Declaration or Counsel's Email in its Fraudulent Joinder Analysis

The Court sees that Defendants seek to bolster their argument of fraudulent joinder by appending the Declaration of Patsy Harris (the "Harris Declaration") in which she states that she did not cause or witness the accident and that she "did not tell Elizabeth Edmonds that [she] stocked the blinds." (ECF No. 8-1, at 1.) This conflicts with the allegations in Edmonds' Complaint. Defendants also ask this Court to consider an email from Edmonds' counsel saying that Edmonds got the impression that Harris stacked the blinds. (ECF No. 8-2, at 1.) If included, these documents might muddy this record, but the Court cannot consider them.

In asking the Court to consider these documents, Defendants rely on the Fourth Circuit case *AIDs Counseling and Testing Centers v. Group W Television, Inc.* 903 F.2d 1000 (4th Cir.

---

return this matter to the Richmond Circuit Court for evaluation of those various theories of liability.

1990). In *AIDS Counseling*, the Fourth Circuit ruled that a district court may "consider the entire record [to] determine the basis of joinder by any means available." 903 F.2d at 1004.

However, *AIDs Counseling* is in apposite. "*AIDS Counseling* is not a typical fraudulent joinder case because the fraudulent joinder issue arose not on a motion to remand immediately following removal, but on a defendant's post-removal motion to amend a complaint to add a nondiverse defendant." *Allard v. Laroya*, 163 F. Supp.3d 309, 312 (E.D. Va. 2019) (citing *Mayes*, 198 F.3d at 463). Importantly, *AIDS Counseling* does "not support the proposition that that it is appropriate to look beyond the pleadings" because Edmonds named Harris, the "nondiverse defendant[,] in [her] initial complaint in state court." *Id.*

Authority cited by Defendants to the contrary does not persuade. For instance, Defendants rely heavily on *Beaudoin v. John Sites*, where the district court found that it could "consider the entire record [to] determine the basis of joinder by any means available." 886 F. Supp. 1300, 1302 (E.D. Va. 1995). But *Beaudoin* predates the Fourth Circuit's *Hartley* decision that admonished courts to "minimize threshold litigation over jurisdiction." 187 F.3d 422 at 425. Even given its status, unlike *AIDS Counseling*, as a "typical" fraudulent joinder case in which all challenged defendants were named in the state court complaint, *Beaudoin* does not persuade given the Fourth Circuit's subsequent clarification that "permit[ting] extensive litigation of the merits of a case while determining jurisdiction thwarts the purpose of jurisdictional rules." *Id.*

Defendants' proffered documents contradict some of the allegations in Edmonds' complaint. But the Court will not add these documents to this federal record because "a jurisdictional inquiry is not the appropriate stage of litigation to resolve these various uncertain question of laws and fact." *Id.* Consideration of these documents would necessarily engender

further jurisdictional discovery, a process the Fourth Circuit disfavors. The Court limits its review to only the pleadings.

### B. The Court Will Remand the Action Because Edmonds Alleges Affirmative Actions by Harris that May Give Rise to Personal Liability

The Defendants argue that the Court should disregard Harris as fraudulently joined when suggesting that no possibility exists that Edmonds could bring a cause of action against Harris. To establish their position, Defendants rely both on the Harris Declaration and the proffered email. They cannot. Given the heavy burden to Defendants bear, they do not establish outright fraud or that Edmonds lacks a "glimmer of hope" to allege a personal injury claim against Harris. *Hartley*, 187 F.3d at 426. On this record, Edmonds asserts misfeasance by Harris sufficient to establish at least the possibility of liability. *See Freeman*, 2019 WL 210396 at *4. Therefore, the Court must find that Edmonds did not fraudulently join Harris.

Drawing all inferences of fact and law in favor of plaintiff, *Hartley*, 187 F.3d at 424, Edmonds' Complaint sufficiently alleges affirmative acts—misfeasance—taken by Harris that caused Edmonds's injuries. Edmonds contends, among other allegations, that Harris herself improperly stacked and stocked the box of wooden blinds "by placing the boxes of blinds in front of the mid-height security bar in an unstable and non-secure position on the shelf[], causing the blinds on the shelf to be unstable and to fall upon the Plaintiff."[7] (ECF No. 1-1 ¶¶12, 13).

---

[7] Defendants contend that Edmonds' Complaint is grammatically incorrect and confusing. Their contention does not entirely lack merit, but it cannot carry the day. For instance, Edmonds writes, "[t]he Defendants, Walmart Stores East, LP and Wal-Mart Stores, Inc. by and through its employees and agents, Patsy Harris improperly stacked and stocked the shelf with the box of wooden blinds." (ECF No. 1-1, at 12.) While Defendants allege that "the pleading tactic [of using vague and unclear language] appears designed to avoid removal," (ECF No. 8, at 4), Edmonds argues that "[c]onstrued in Plaintiff's favor, this alleged misfeasance presents a possibility of a negligence claim against Harris" because "when Plaintiff alleges an affirmative act of negligence, she specifically and outright identifies Harris." (ECF No. 9, at 2.)

This constitutes an affirmative act giving rise to a personal duty owed by Harris under the standard premises liability theory articulated in Virginia law. *See Freeman*, 2019 WL 210396 at *4. Edmonds sufficiently alleges that stacking the box of wooden blinds alone amounted to a negligent act because Edmonds knew or should have known the safety risks caused by stacking the blinds in front of the security bar. The allegation that Harris "actually caused the dangerous condition asserts a claim of misfeasance sufficient for the possibility of liability" under the law. *Freeman*, 2019 WL 210396 at *4 (granting motion to remand and finding that an employee negligently operating a boiler that ultimately exploded was a claim of misfeasance, not nonfeasance); *Hall*, 2013 WL 3458256 at *4 (granting motion to remand and finding that an allegation that a store employee actually caused a dangerous condition—a green bean to be on the floor while working in the produce area—asserted a claim of misfeasance for which recovery in state court was at least possible). Thus, Edmonds states a possible claim that Harris committed misfeasance in stacking the boxes of blinds, and that her breach of duty caused Edmonds harm when the blinds fell on her.

The Court concludes that Edmonds alleges affirmative negligent acts by Harris that caused the blinds to fall.[8] Because the Defendants cannot show that no possibility exists that

---

Because of the deference due to Edmonds at this procedural stage, even considering all challenges raised by the Defendants, the Court finds that the Complaint sufficiently identities Harris as an affirmative tortfeasor. Not only does the standard of review dictate a highly favorable reading of facts alleged when applying the law, but Edmonds' lawyers also well know that they must file documents that, after a reasonable inquiry, present factual contentions that have evidentiary support, or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. *See* Fed. Rule Civ. P. 11(b)(3).

[8] Of course, the Court makes no findings related to the likelihood of success of Edmonds' claims against Harris—or the Wal-Mart Defendants—in the Richmond Circuit Court. *See Harris v. Webster*, No. 3:08cv397, 2008 WL 4396231, at *4 (E.D. Va. Sept. 23, 2008). In deciding the Motion to Remand, the Court finds only that the Defendants failed to meet the

Edmonds can bring a cause of action against Harris, the Defendants fail to meet their heavy burden of demonstrating that Edmonds fraudulently joined Harris to this action. *See Hartley*, 187 F.3d at 424. Considering Harris's citizenship, as it must, the Court concludes that complete diversity does not exist between the parties. Therefore, the Court lacks subject matter jurisdiction and must remand the case to the Richmond Circuit Court.[9]

### IV. Conclusion

For the foregoing reasons, the Court will grant Edmonds' Motion to Remand. (ECF No. 6.) The Court declines to award fees. An appropriate Order shall issue.

Date: 03/09/23
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge

---

heavy burden of establishing that no possibility exists that Edmonds can bring a cause of action against Harris. *See Hartley*, 187 F.3d at 424.

[9] Because this case required some factual and legal inquiry, the Court declines to award attorney's fees. Although "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal," 28 U.S.C. § 1447(c), a court should only award attorney fees "if the removing defendant[s] lacked objectively reasonable grounds to believe the removal was legally proper." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005). While the Court will remand this case, nothing in the record supports a finding that the Defendants lacked an objectively reasonable basis to remove the case.